IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

*Plaintiff,*

v.

SAMUEL RALPH JORDAN,

*Defendant.*

Criminal No. 2:23-cr-271 - 1

Hon. William S. Stickman IV

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

Defendant Samuel Ralph Jordan ("Jordan") filed a Motion to Suppress Evidence and Statements seeking the suppression of physical evidence and statements obtained on January 14, 2021, during a search of his residence. (ECF No. 49). The Government filed a response. (ECF No. 60). The Court held a hearing on October 20, 2025. (ECF No. 73). Post-hearing briefs were submitted thereafter. (ECF Nos. 80, 81, 91, and 92). For the following reasons, the Court will deny Jordan's motion.

## I. FACTUAL BACKGROUND[1]

On November 26, 2020, at an International Mail Facility in New York, U. S. Customs and Border Protection ("CBP") inspected a parcel from China. (ECF No. 49-1, ¶ 6). The parcel was labeled as containing a "fuel filter" but CBP agents believed that it contained a firearm

---

[1] This section encompasses the Court's findings of fact as well as its credibility determinations. When ruling on a suppression motion, the Court takes on the role of fact finder and thus "is responsible for assessing the credibility of the testifying witnesses, weighing the evidence, and reaching any 'inferences, deductions and conclusions to be drawn from the evidence.'" *United States v. Cole*, 425 F. Supp. 3d 468, 473 (W.D. Pa. 2019) (quoting *United States v. Harris*, 884 F. Supp. 2d 383, 387 n.2 (W.D. Pa. 2012)).

suppressor. (ECF No. 73, p. 42); (ECF No. 49-1, ¶¶ 6-7). The parcel was addressed to Jordan's residence in Hopwood, Pennsylvania. (ECF No. 73, p. 39); (ECF No. 49-1, ¶ 12). The return address was Xian, China. (ECF No. 73, p. 39); (ECF No. 49-1, ¶ 12). The address label included Jordan's telephone number. (ECF No. 49-1, ¶ 12). According to CBP records, the same sender in China was associated with approximately twenty seizures of firearm silencers in the months proceeding November 2020. (ECF No. 73, pp. 39-442); (ECF No. 49-1, ¶ 19). CBP notified U. S. Homeland Security Investigations ("HSI") and the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") of the seizure and forwarded the seized item to HSI for further investigation. (ECF No. 73, pp. 32-22); (ECF No. 49-1, ¶ 9). Because of intertwining investigations on the border regarding inbound and outbound firearms, ammunition, and gun parts, HSI and the ATF work closely and often share information. (ECF No. 73, p. 35).

HSI Agent Scott Fell ("Agent Fell") received the item on December 11, 2020. (ECF No. 73, p. 29); (ECF No. 49-1, ¶¶ 10-11). In his inspection of the seized item, Agent Fell determined that the box in the parcel was labeled "5/8-24" – a common threading pitch found on firearm barrels. (ECF No. 49-1, ¶ 13 n.1). The box contained a black metal cylinder with no manufacturer's markings or serial number, two endcaps, one of which was threaded, a metal spacer, and seven metal baffles. (ECF No. 73, p. 54); (ECF No. 49-1, ¶ 14). The unthreaded endcap and the baffles had indentation marks showing an individual where one could drill through the item. (ECF No. 49-1, ¶¶ 14, 21). Based on his training, experience, and review of internal ATF guidance, Agent Fell believed there was probable cause to believe the item was a firearm suppressor.[2] (ECF No. 73, pp. 26-28, 33-36, 45-46, 51-55); (ECF No. 49-1, ¶¶ 20-22).

---

[2] Agent Fell has been involved in approximately twelve silencer cases from mid-2020 to the present, and he has worked with the ATF and received on-the-job training on silencers. (ECF No. 73, pp. 26-27). He is familiar with ATF Technical Bulletins, which provide guidance on law

Agent Fell ran Jordan's criminal history and determined that he had multiple prior convictions for offenses punishable by imprisonment for a term exceeding one year. (ECF No. 73, p. 48); (ECF No. 49-1, ¶ 25). Using Pennsylvania Department of Transportation records, Agent Fell confirmed that Jordan's home address matched the delivery address on the parcel. (ECF No. 73, p. 47); (ECF No. 49-1, ¶ 24). Agent Fell conducted visual surveillance on Jordan's home address in Hopwood, Pennsylvania and found that there were two vehicles registered to Jordan parked at that address. Agent Fell determined that several months before the seizure of the parcel at issue, Jordan received an iron scope sight (a firearms accessory) in the mail. (ECF No. 73, p. 47); (ECF No. 49-1, ¶ 27). This item was also sent from China. (ECF No. 73, p. 39); (ECF No. 49-1, ¶ 27). Jordan had a Pennsylvania Resident Adult Hunting License (allowing him to hunt wildlife with firearms), but not a license for archery hunting. (ECF No. 49-1, ¶ 28). Neither Jordan nor his wife had a federal firearms license to engage in business as a firearms dealer nor registered any items in the National Firearm Registration and Transfer Record. (ECF No. 73, p. 36); (ECF No. 49-1, ¶ 31).

On January 13, 2021, Agent Fell applied for an anticipatory search warrant of Jordan's residence. (ECF No. 73, p. 29). United States Magistrate Judge Patricia L. Dodge issued the

---

enforcement investigations. (*Id.* at 31). At the hearing, Agent Fell explained that he brought the ATF in on the investigation from the beginning to do record checks and other law enforcement tasks. (*Id.* at 36-37). Notably, in preparing the affidavit, Agent Fell discussed the silencer sent to Jordan with an ATF special agent. (*Id.* at 33-34). Due to the time it would take for analysis and the risk that such a delay might increase the chance that Jordan would not accept the package, Agent Fell did not send the silencer to the ATF Firearms and Technology Division for classification. (*Id.* at 34).

[3] Typically, a fuel filter includes a filtering device to capture particles or foreign objects among the fuel or oil, and it has two open ends. (*Id.* at 53-55); (ECF No. 49-2). The silencer sent to Jordan did not have any filtering medium. (*Id.* at 53-55). It had only one open end cap. (ECF No. 49-1, pp. 4-5). Jordon's own expert, Brian Luettke, agreed at the hearing that the ATF likely would have classified the device Jordan received as a silencer. (ECF No. 73, p. 80).

warrant which was to be executed upon a controlled delivery of the seized item. (ECF No. 73, p. 29, 44); (ECF No. 60-1). Agent Fell's affidavit specified that there was probable cause to believe the item in the package was a firearm suppressor and the search would reveal evidence relating to five federal crimes: 18 U.S.C. § 545, smuggling goods into the United States; 18 U.S.C. § 541, entry of goods falsely classified; 18 U.S.C. § 922(1) and 26 U.S.C. § 5844, unlawful importation of a firearm; 26 U.S.C. § 5861(d), possession of an unregistered firearm, including a silencer; and 18 U.S.C. § 922(g)(1), possession of a firearm by a convicted felon. (ECF No. 49-1, ¶ 5). On January 14, 2021, federal agents from HSI, ATF, U. S. Postal Inspection Service (USPIS), the Pennsylvania State Police (PSP), and the Pennsylvania Game Commission performed a controlled delivery of the seized package. (ECF No. 73, p. 29).

The USPIS Inspector, acting undercover as a mail letter carrier, delivered the parcel containing the seized item to Jordan's residence. (ECF No. 73, pp. 29-30). Tiffany Jordan, Jordan's wife, answered the door and accepted the parcel. Thereafter, agents presented the warrant and proceeded to execute the search. Law enforcement officers found the parcel that contained the seized item opened with the item removed and placed on a table in the kitchen. They also found seven firearms, hundreds of rounds of ammunition, and body armor in Jordan's residence. (ECF No. 60-2).

The Government has represented that:

During the search, Jordan spontaneously stated to law enforcement officers that, as he understood it, the guidelines on the misdemeanors and felonies that prohibit people from having firearms did not appear to be what he had been convicted of. Jordan stated that what he had read made him believe he was not a prohibited individual, and commented that "the one crime I got, the longest sentence for was 9-14." Agents executing the search warrant also briefly interviewed Tiffany Jordan. Ms. Jordan said she was unaware of ordering or purchasing a firearm suppressor. She said that if anything was ordered to the house, it was Jordan who ordered it.

(ECF No. 60, p. 5).

## II.    ANALYSIS

Jordan seeks to suppress all the physical evidence and statements obtained during the January 14, 2021, search of his residence.  (ECF No. 49).  He argues that the evidence and statements should be suppressed because the search warrant misstated and omitted material facts in violation of *Franks v. Delaware*, 438 U.S. 154 (1978).  (ECF No. 49, p. 4).  He contends that the alleged omissions and misstatements were material to the finding of probable cause and that consideration of the affidavit with the inclusion of the omitted facts would have resulted in a lack of probable cause.  Further, Jordan argues that the parcel was not sufficiently tied to the likelihood of finding contraband in his residence.  (*Id.* at 15).  The Court will address his arguments individually below.

### A.  Alleged Omissions and Misstatements

The Warrant Clause of the Fourth Amendment to the United States Constitution provides in pertinent part that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. CONST. amend. IV. It has been referred to by the Supreme Court as the "bulwark of Fourth Amendment protection."  *Franks*, 438 U.S. at 164.  Jordan argues that the affidavit warrant contained several material omissions or misstatements: (1) the item seized was not operable as a firearm suppressor; (2) the affidavit misrepresented the steps needed for the item to be utilized as such; and (3) the affiant failed to provide the issuing judge with the information relied upon in designating the item seized as a firearm.  (ECF No. 49, pp. 4-8).  The Government counters that the alleged omissions and misstatements do not exist, or, in the alternative, that any purported omissions or misstatements were not material to probable cause. (ECF No. 60, pp. 13-17); (ECF No. 80, pp. 5-9, 12).

In *Franks*, the United States Supreme Court determined that a criminal defendant has the right to challenge the truthfulness of factual statements made in an affidavit of probable cause supporting a warrant subsequent to the *ex parte* issuance of the warrant. *Franks*, 438 U.S. at 171-72. The Court created a mechanism to allow a defendant to overcome the general presumption that an affidavit of probable cause supporting a search warrant is valid. First, the defendant must make a "substantial preliminary showing" that the affidavit contained a false statement, which was made knowingly or with reckless disregard for the truth, which is material to the finding of probable cause. *Id.* at 171. At the hearing, the defendant must ultimately prove by a preponderance of the evidence that: (1) the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant and (2) that such statements or omissions were material, or necessary, to the probable cause determination. *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997) (citing *Franks*, 438 U.S. at 171–72).

The Supreme Court in "*Franks* gave no guidance concerning what constitutes a reckless disregard for the truth in fourth amendment cases, except to state that 'negligence or innocent mistake [is] insufficient.'" *Wilson v. Russo*, 212 F.3d 781, 787 (3d Cir. 2000) (quoting *United States v. Davis*, 617 F.2d 677, 694 (D.C. Cir. 1979)). In *Wilson*, the United States Court of Appeals for the Third Circuit set forth standards to identify what constitutes "reckless disregard for the truth" regarding both misstatements and omissions:

> In evaluating a claim that an officer both asserted and omitted facts with reckless disregard for the truth, we hold that: (1) omissions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would want to know; and (2) assertions are made with reckless disregard for the truth when an officer has obvious reasons to doubt the truth of what he or she is asserting.

*Id.* at 783. The latter standard is similar to the actual malice standard set forth in First Amendment defamation claims. *Id.* at 788. The defendant must prove by a preponderance of the evidence that probable cause does not exist under the corrected affidavit, i.e., that the deficiency in the affidavit was material to the original probable cause finding. *Id.*

There is a distinction between misrepresentations and omissions for purposes of determining whether deficiencies in the affidavit are "material." *United States v. Yusuf*, 461 F.3d 374, 383-84 (3d Cir. 2006)  When faced with an affirmative misrepresentation, the Court is required to excise the false statement from the affidavit. *Id.* at 384. In contrast, when faced with an omission, the Court must remove the "falsehood created by an omission by supplying the omitted information to the original affidavit." *Id.* (internal citations omitted). If the defendant is able to ultimately meet this burden, "the Fourth Amendment requires that . . . the fruits of the search [must be] excluded to the same extent as if probable case was lacking on the face of the affidavit." *United States v. Frost*, 999 F.2d 737, 743 (3d Cir.1993) (quoting *Franks*, 438 U.S. at 156).

a.  The Operability of the Seized Item

First, Jordan argues that if Agent Fell included in his affidavit that the seized item was not operable as a firearm suppressor in its seized form, the warrant would not have been issued. (ECF No. 49, p. 6); (ECF No. 81, pp. 8-10). The Government counters that there is no omission because the affidavit "does convey that the end user would likely drill holes to use the [suppressor]." (ECF No. 60, p. 13); (ECF No. 80, pp. 6-7). It cites to the following section of the affidavit:

> Your Affiant has reviewed ATF Firearms & Ammunition Technology Division, Technical Bulletin 20-01 (dated October 30, 2019). This bulletin depicts an item which appears to be identical to the item seized by CBP (pictured above). The

7

device which ATF detailed in their bulletin was being marketed as a NAPA 4003 filter, despite having no filtering capacity.

Like the device seized by CBP, this device contained seven (7) silencer baffles and a spacer to create a "blast chamber" at the barrel end of the device, a known silencer feature. Further, both devices have indentation marks depicting where to drill through the baffles and end cap. In the technical bulletin, ATF opined that such devices that have a hole in or indexing mark for a hole in the front end-cap are classified as a "firearms silencer" under the NFA.

(*Id.* (citing ECF No. 49-1, ¶ 21)). The Government further contends that operability is irrelevant to probable cause because a suppressor need not be operable to qualify as a suppressor. (*Id.*).

A suppressor is defined by statute as "any device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication." 18 U.S.C. § 921(a)(25). The statute does not contain any indication that operability is a necessary component of a silencer. As explained by the United States Court of Appeals for the Eighth Circuit: "[t]he language of [18 U.S.C. § 921(a)(25)] focuses on the intended application of a silencer, not its actual demonstrated operation." *United States v. Carter*, 465 F.3d 658, 667 (6th Cir. 2006). The position that operability is required "would be supported by the use of statutory language such as 'is capable of silencing' or 'that silences.' Congress did not use such wording. The word choice indicates a concern for the purpose of the mechanism, and the parts thereof, not the function." *Id.*; *see also United States v. Rogers*, 270 F.3d 1076, 1081 (7th Cir. 2001) (holding that jury instructions that conviction depended not on whether the item was an operable silencer but on whether it was *intended* to work as a silencer "tracks the statutory definition"); *United States v. Syverson*, 90 F.3d 227, 232 (7th Cir. 1996) (rejecting appellants argument that statute only prohibits silencers that are operable as "contrary to the plain language of the statute . . . [which] defines a silencer as

'any device for silencing, muffling, or diminishing' the report of a firearm . . . [and] does not limit the definition of silencer to 'a device that silences, muffles, or diminishes'"); *United States v. Speed*, Case No 1:22-cr-165, 2023 WL 3741625, at *4 n.12 (E.D. Va. May 30, 2023) ("[A] device need not be operable to meet the statutory definition of 'silencer' in 18 U.S.C. § 921[(a)](25) . . . .").

The Court agrees with the analysis of the Eighth Circuit and holds that the Government need not prove that an item is in operable condition as a firearm suppressor to obtain a conviction under 18 U.S.C. § 921(a)(25). All that is required is that the device fall within the statutory definition of a silencer or muffler. Holding otherwise, ruling that a device must be operable as a fully functioning suppressor to fall within the definition of § 921(a)(25), would create a loophole in the law thwarting the intent of Congress as expressed in the statute.

In light of this holding, the Court need not decide whether the affidavit implied that modification was necessary or Agent Fell knowingly and deliberately, or with a reckless disregard for the truth, omitted the fact that the seized item was not, in its seized form, operable as a silencer.[4] [5] The Court holds that even if the affidavit explicitly stated that the seized item required modification before it would be operable as a silencer, the warrant would still have been

---

[4] Nevertheless, the Court notes that it finds Agent Fell's testimony at the evidentiary hearing to be entirely credible. He did not intentionally misrepresent or intentionally omit any information that he believed to be relevant to the probable cause analysis in the affidavit. (ECF No. 73, p. 52).

[5] Jordan repeatedly asserts that the item seized "would have to be substantially modified" to be operable as a firearm suppressor. (ECF No. 49, pp. 7, 10); (ECF No. 81, p. 12); (ECF No. 92). Nonetheless, Jordan, who has the burden to show that any omission was material to the issuing magistrate judge's probable cause determination, does not explain what modifications are required. The Court finds that the modification required was not substantial; all that is required is that the user drill holes, as indicated by the index marks, in the end cap and baffles. (*See* ECF No. 49, p. 16 (stating that the affidavit alleged that Jordan "ordered an item – that would with the proper intent and use of a drill – become illegal")). This would only take a few minutes to do before the silencer would be usable on a firearm. (ECF No. 73, pp. 30, 51).

supported by probable cause – especially since operability is not required for a conviction under 26 U.S.C. § 5861(d).  The Court holds that the affidavit's purported omission regarding the alleged suppressor's operability was not material to the issuing magistrate judge's probable cause determination and thus does not provide a basis for suppression.

   b. <u>Alleged Misrepresentations in the Affidavit</u>

  Second, Jordan argues that the affidavit described firearm suppressors in a manner that misrepresented the steps needed for the seized item to be utilized:

> Agent Fell further attested that "your Affiant is aware that firearm suppressors, also known as 'silencer,' vary by design and appearance, but all, *when properly installed*, will silence, muffle or diminish, the report of a portable firearm."  The implication was that the item seized – and subject to the NFA – would merely need to be properly installed on a portable firearm. This is a material misstatement. Again, there is no mention that the item seized would have to be substantially modified – not just "properly installed" to operate as a suppressor.

(ECF No. 49, p. 7 (citing ECF No. 49-1, ¶ 33) (emphasis in ECF No. 49)); (ECF No. 81, pp. 10-11).  The Government responds that this information was not relevant or material to the issuing magistrate judge's probable cause determination and that, in any event, because modifications are dependent on the specific firearms available to the user, Agent Fell could not have known what – if any – modifications Jordan would need to make in order to utilize the item as a suppressor.  (ECF No. 60, p. 14); (ECF No. 80, pp. 6, 9-12).

  The Court does not view Agent Fell's statement that the item, "when properly installed," would function as a silencer, as a misrepresentation.  Jordan does not purport that this statement is facially inaccurate – he objects to the purported implication that the seized item merely needed to be installed.  Agent Fell did not assert that the item needed no modification to operate as a silencer, nor did he say that installation was all that was required to utilize the item as a suppressor.  The Court does not read the statement at issue as making any inaccurate or

misleading implication.  Because the Court does not find that Agent Fell's statement was a misrepresentation, it need not reach the issue of materiality or Agent Fell's state of mind.  This argument does not provide a basis for suppression.

    c.  Reliance on ATF Technical Bulletins

    Third, Jordan argues that Agent Fell, throughout the affidavit, relied heavily and inappropriately on ATF Technical Bulletins to conclude that the seized item was an illegal firearm suppressor.  (ECF No. 49, p. 8); (ECF No. 81, pp. 17-19).  The guidance was not provided to the issuing magistrate judge for consideration.  Jordan contends that this was a material omission, that the issuing magistrate judge should have been provided with this internal ATF guidance to consider "the suitability of relying on non-statutory, non-regulatory guidance." (ECF No. 49, p. 8).  Jordan does not cite any specific section of the Technical Bulletin that would have undermined the existence of probable cause.  The Court views Jordan's argument as follows: Agent Fell relied on ATF Technical Bulletins in determining whether there was probable cause to believe that the seized item was a firearm suppressor, this guidance was somehow improper because the ATF has purportedly changed their position over time on what constitutes a firearm suppressor, and if the material was provided to the issuing magistrate judge, she would have found that Agent Fell's reliance on the Technical Bulletins was improper and thus, there was no probable cause.  At the same time, Jordan argues that the ATF Technical Bulletins are not entitled to deference and acknowledges that 18 U.S.C. § 912(a)(25) "is the only thing that controls here."  (ECF No. 49, p. 14); (ECF No. 81, pp. 19).

    The ATF guidance referenced by Agent Fell in his affidavit, Technical Bulletin 20-01 ("Bulletin 20-01"), is labeled "Unclassified/Law Enforcement Sensitive."  (ECF No. 49-2).  It states that it "is intended to assist ATF and law enforcement personnel in identifying items

marketed as 'inline filters' that are 'firearm silencers' as defined." (*Id.* at 6). In other words, Bulletin 20-01 is internal ATF guidance intended to assist agents in determining whether an item is a silencer within the definition of 18 U.S.C. § 921(a)(25). *See United States v. Hay*, 46 F.4th 746, 750 (8th Cir. 2022) ("[R]ather than attempting to change the law, [Bulletin 20-01] merely seeks to inform law enforcement officers of items that qualify as firearm silencers under the law as it already exists."). The issuing magistrate judge's task was to "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [her], including the veracity and basis of knowledge of persons supplying hearsay information, there [was] a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Rivera*, 347 F. App'x 833, 841 (3d Cir. 2009). In considering whether probable cause existed, the issuing magistrate judge was permitted to give "considerable weight to the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found and is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." *United States v. Caicedo*, 85 F.3d 1184, 1192 (6th Cir. 1996) (quoting *United States v. Lawson*, 999 F.2d 985, 987 (6th Cir. 1993) (internal quotations omitted)). "[S]tatements in an affidavit may not be read in isolation—the affidavit must be read as a whole." *United States v. Conley*, 4 F.3d 1200, 1208 (3d Cir. 1993) (citations omitted).

Jordan argues that "[h]ad [Bulletin 20-01] been provided, the Magistrate, who ultimately had to determine probable cause, could have examined the suitability of relying on non-statutory, non-regulatory guidance to determining whether there was probable cause sufficient to sign the search warrant." (ECF No. 49, p. 8); (ECF No. 81, p. 18). This argument fails. The issuing magistrate judge considered the affidavit, including Agent Fell's assertion that he reviewed

Bulletin 20-01, in determining whether there was probable cause to believe that evidence of a crime may be found in his residence, including a violation of 26 U.S.C. § 5861(d). There is no requirement that the issuing magistrate judge be presented with *all* the information that law enforcement officers reviewed in drafting their affidavits. There is no prohibition on agents reviewing or relying on internal agency guidance in performing their duties. Further, even if Bulletin 20-01 was presented to the issuing magistrate judge, probable cause would still have existed. Bulletin 20-01 contained statements that supported Agent Fell's conclusion that there was probable cause to believe that the seized item was a firearm suppressor. (ECF No. 49-2, p. 2 ("Devices that have a hole in or indexing mark for a hole in the front end-cap are classified as a 'firearm silencer" under the [National Firearms Act].")).[6] The Court holds that not presenting the issuing magistrate judge with Bulletin 20-01 was not a material omission.

### B. Probable Cause

Jordan next argues that (1) there was not sufficient evidence linking him to any intent to modify the seized item and (2) the seized item was not a firearm. (ECF No. 49, pp. 8-14). The Court holds that the issuing magistrate judge had a substantial basis for concluding that probable cause existed.

When faced with a challenge to a magistrate judge's probable cause determination, the Court's role is limited. The Court may not conduct a *de novo* review. Rather, it simply ensures that the issuing magistrate judge had a substantial basis for concluding that probable cause

---

[6] The Court finds Jordan's argument in this section of his brief to be conflicting with his later argument that Bulletin 20-01 was not entitled to any judicial deference. (*See* ECF No. 49, pp. 12-14). Jordan states that the statute, 18 U.S.C. § 921(a)(25), is "the only thing that controls here." (*Id.* at 14). The issuing magistrate judge was presented with the facts supporting probable cause and the target offenses, including the statute defining firearm silencers/mufflers. The Court is confused how Jordan can contend that not presenting the issuing judge with Bulletin 20-01 was a material omission while simultaneously arguing that Bulletin 20-01 is "non-statutory, non-regulatory guidance" that is not entitled to judicial deference.

existed. *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983); *United States v. Kepner*, 843 F.2d 755, 762 (3d Cir. 1988). This standard of review "does not mean that reviewing courts should simply rubber stamp [the issuing magistrate judge's] conclusions." *United States v. Tehfe*, 722 F.2d 1114, 1117 (3d Cir. 1983). It does mean that "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *United States v. Ventresca*, 380 U.S. 102, 109 (1965).

    a.  <u>Intent to Modify the Seized Item</u>

      Jordan takes issue with several facets of the affidavit. First, he contends that the affidavit did not contain any information inputting Jordan's knowledge of the index marks. (ECF No. 49, p. 9). In other words, it did not contain evidence that Jordan intended to buy an item with index markings or that Jordan knew such markings would be on the device. (*Id.*). Second, he contends that the affiant did not provide information about the origin of the seized item other than that there were approximately twenty (20) seizures of firearm suppressors between August and December 2020. (*Id.*). Jordan argues: "[n]o information was provided about what the outcome of any seizures was, how many packages had been delivered successfully. There was no information about how the sender described the product and whether the product was marketed with any indentations, or what indentations meant." (*Id.*). And in his post-hearing briefing, Jordan faults Agent Fell for not investigating the seller, and for not "attempt[ing] to identify the specific product listing [ ] Jordan viewed, the description of the item he intended to order," and determining "what [ ] Jordan ordered online in the six weeks prior to seeking a search warrant." (ECF No. 81, pp. 11-12); (ECF No. 92). The Government responds that none of Jordan's grievances with the search warrant and the affidavit are relevant to probable cause. (ECF No. 60, p. 16).

As articulated by the Third Circuit:

> The principles governing a probable cause determination are well established. A magistrate may find probable cause when, viewing the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. *Proof beyond a reasonable doubt is not required. Id.* at 235. Further, if a substantial basis exists to support the [issuing judge's] probable cause finding, we must uphold that finding even if a "different magistrate judge might have found the affidavit insufficient to support a warrant." *Conley*, 4 F.3d at 1205. The duty of a reviewing court is "simply to ensure that the magistrate had a substantial basis for . . . concluding that probable cause existed." *Gates*, 462 U.S. at 238. We have held that "probable cause is a fluid concept" that turns on "the assessment of probabilities in particular factual contexts not readily, or even usefully, reduced to a neat set of legal rules." *United States v. Shields*, 458 F.3d 269, 277 (3d Cir. 2006) (citing *Gates*, 462 U.S. at 232). The supporting affidavit to a search warrant is to be read in its entirety and in a common sense, nontechnical manner. *See United States v. Williams*, 124 F.3d 411, 420 (3d Cir. 1997).

*United States v. Miknevich*, 638 F.3d 178, 182 (3d Cir. 2011) (emphasis added); *see also Yusuf*, 461 F.3d at 390 (stating that a finding of probable cause "does not require absolute certainty that evidence of criminal activity will be found at a particular place, but rather that it is reasonable to assume that a search will uncover such evidence").

The issues that Jordan raises with regard to his intent and knowledge, or lack thereof, with regard to the seized item's alleged index markings, may be relevant as to whether the Government has proved his guilt beyond a reasonable doubt at a trial on the merits. But these purported deficiencies do not render the search warrant affidavit lacking in probable cause. Agent Fell determined that the box in the parcel was labeled "5/8-24" – a common threading pitch found on firearm barrels. (ECF No. 49-1, ¶ 13 n.1). The box contained a black metal cylinder with no manufacturer's markings or serial number, two endcaps, one of which was threaded, a metal spacer, and seven metal baffles. (ECF No. 49-1, ¶ 14). The unthreaded endcap and the baffles had indentation marks showing an individual where one could drill through the item. (ECF No. 49-1, ¶¶ 14, 21). Based on his training, experience, and review of internal ATF

15

guidance, Agent Fell believed that there was probable cause to presume the item was a firearm suppressor. (ECF No. 73, pp. 26-28, 33-36, 45-46, 51-55); (ECF No. 49-1, ¶¶ 20-22). Agent Fell ran Jordan's criminal history and determined that he had multiple prior convictions for offenses punishable by imprisonment for a term exceeding one year. (ECF No. 73, p. 48); (ECF No. 49-1, ¶ 25). He confirmed that Jordan's home address matched the delivery address on the parcel and conducted visual surveillance on Jordan's home address in Hopwood, Pennsylvania. (ECF No. 73, p. 47); (ECF No. 49-1, ¶ 24). Agent Fell determined that there were two vehicles registered to Jordan parked at that address. Jordan had previously ordered firearm accessories to be shipped to his home address.[7] Neither Jordan nor his wife had a federal firearms license to engage in business as a firearms dealer nor registered any items in the National Firearm Registration and Transfer Record. (ECF No. 73, p. 36); (ECF No. 49-1, ¶ 31). This information was sufficient for the issuing magistrate judge to make a common-sense decision that there was a fair probability that contraband or evidence of a crime would be found in Jordan's residence – that was especially reasonable given that the warrant was anticipatory and was triggered by the acceptance of the alleged firearm suppressor at Jordan's residence. The Court holds that the affidavit provided the issuing magistrate judge with a substantial basis to find the warrant was supported by probable cause.[8]

---

[7] Jordan is focused on the fact that the iron scope he had shipped to his residence in May 2020, "is not a real item and therefore possession of it is not just prohibited or illegal, it is impossible." (ECF No. 81, p. 13). But as Jordan's own expert testified, such a device is commonly attached to a firearm to improve the accuracy of a weapon. (ECF No. 73, pp. 87-88). Thus, no error flows from the inclusion of such information in the affidavit.

[8] The Court finds Jordon's post-hearing fixation on the nature of his hunting license (ECF No. 81, pp. 13-16; ECF No. 77; ECF No. 92) to be irrelevant in light of the abundant evidence laid out in the affidavit supporting the magistrate judge's probable cause finding. It understands Jordon's position (i.e., that because he could have planned to hunt with a flintlock rifle, a hunting license without an archery stamp is not suspicious), but will deny his motion to supplement the

b.  The Seized Item and the Definition of a Firearm

Jordan next argues that the seized item was not a silencer/muffler within the definition of 18 U.S.C. § 921(a)(25).  (ECF No. 49, p. 10).  He contends that Bulletin 20-01 "impermissibly expanded the definition of a silencer to include items such as fuel filters and solvent traps capable of modification – but not yet modified – as silencers."  (*Id.*).  According to Jordan, Bulletin 20-01's purported expansion exceeds the ATF's authority under the Administrative Procedure Act and if the issuing judge had "been aware of the need for further modification, and the ATF's expansion of the definition of firearm, there would not have been a finding of probable cause."  (*Id.*); (ECF No. 81, p. 19).  Jordan points to what he describes as the ATF's inconsistent positions between its 2017 and 2020 Technical Bulletins regarding the definition of a firearm silencer/muffler.  (ECF No. 49, p. 10); (ECF No. 81, pp. 18-19).

The Court already rejected Jordan's argument that if Bulletin 20-01 were attached to the warrant it would have defeated a finding of probable cause.  The Court found that not presenting Bulletin 20-01 to the issuing magistrate judge did not constitute a material omission.  The rest of Jordan's arguments are relevant to whether the seized item was a firearm silencer/muffler.  To convict Jordan of violating 26 U.S.C. § 5861(d), the Government must provide beyond a reasonable doubt that the seized item was a firearm silencer/muffler.  Whether the item *definitively* falls within the definition of 18 U.S.C. § 921(a)(25) is, however, not determinative of whether the warrant was supported by probable cause.  For example, in *United States v. Hugoboom*, 112 F.3d 1081 (10th Cir. 1997), the United States Court of Appeals for the Tenth

---

record.  The probable cause determination is to be made by the magistrate judge after considering the totality of the circumstances, which requires it to consider the cumulative weight of the information set forth by the investigating officer in connection with reasonable inferences that the officer is permitted to make based upon the officer's specialized training and experiences. *United States v. Arvizu*, 534 U.S. 266, 275-76 (2002).

Circuit rejected the argument that an anticipatory search warrant was not supported by probable

cause because the substance in the parcel believed to be cocaine later turned out to be ephedrine.

*Id.* at 1086 n.6.  It noted:

> [I]n order to satisfy the "reasonableness" requirement of the Fourth Amendment, what is generally demanded of the many factual determinations that must regularly be made by agents of the government—whether the magistrate issuing a warrant, the police officer executing a warrant, or the police officer conducting a search or seizure under one of the exceptions to the warrant requirement—is not that they always be correct, but that they always be reasonable.

*Id.* (quoting *Illinois v. Rodriguez*, 497 U.S. 177, 185 (1990)).

Here, whether the seized item was a firearm silencer/muffler within the meaning of 18

U.S.C. § 921(a)(25) is a question for a later date.  The Court expresses no view on this issue or

on any of Jordan's arguments pertaining to the inconsistency between the ATF Technical

Bulletins.  The question in considering Jordan's motion to suppress is whether it was reasonable

for Agent Fell and the issuing magistrate judge to believe there was probable cause that the

seized item was an unlawful firearm suppressor.  For the reasons articulated above, in light of the

facts set forth in the affidavit, the Court holds that such a conclusion was reasonable and the

warrant was supported by probable cause.  Any argument that the seized item was not a firearm

silencer/muffler is a question for the fact finder and cannot be decided by the Court at this early

stage of litigation.

## C.  The Nexus between the Parcel and Jordan's Residence

Finally, Jordan argues that the evidence seized at his residence should be suppressed

because the seized parcel was not sufficiently tied to the likelihood of finding contraband in his

home.  (ECF No. 49, p. 15).  The Government counters that once the seized parcel was accepted

into the residence "at a minimum, the search of the residence would likely lead to recovery of

evidence reflecting Jordan's possession of the unregistered silencer and his importation of the item." (ECF No. 60, p. 11).

The Third Circuit addressed anticipatory warrants in *United States v. Loy*, 191 F.3d 360 (3d Cir. 1999), stating:

> Anticipatory warrants differ from traditional warrants in that they are not supported by probable cause to believe the items to be seized are at the place to be searched when the warrant is issued. *United States v. Rowland*, 145 F.3d 1194, 1201 (10th Cir. 1998). In fact, when issuing an anticipatory warrant, the court knows that the contraband has not yet reached the place to be searched. *Id.* That does not mean, however, that anticipatory warrants do not have to be supported by probable cause. As with all warrants, there must be a sufficient nexus between the contraband to be seized and the place to be searched before an anticipatory warrant can be issued. *Id.* (quoting *United States v. Dennis*, 115 F.3d 524, 529 (7th Cir.1997)).
>
> To satisfy the nexus requirement, it is not enough that the anticipatory search warrant be conditioned on the contraband arriving at the designated place. While such conditions guarantee that there will be probable cause at the time the search is conducted, the warrant must also be supported by probable cause at the time it is issued. . . . Consequently, when presented with an application for an anticipatory warrant, the magistrate judge cannot rely on police assurances that the search will not be conducted until probable cause exists. *Rowland*, 145 F.3d at 1202. Instead, the magistrate judge must find, based on facts existing when the warrant is issued, that there is probable cause to believe the contraband, which is not yet at the place to be searched, will be there when the warrant is executed. *Id.*

*Id.* at 364-65. "Where the warrant application indicates that there will be a controlled delivery of contraband to the place to be searched, the nexus requirement of probable cause is usually satisfied." *Id.* at 365.

Here, the delivery address and the place to be searched were the same location. *Cf. id.* at 366-67 (finding that there was not a sufficient nexus between the contraband and the location to be searched when the contraband was delivered to a post office box and the only tie to the defendant's residence was a conclusory statement that individuals who possess child sexual abuse material often store it in their homes). The affidavit established probable cause that the

seized item, as well as other unlawfully possessed firearms, would be present at Jordan's residence when the warrant was executed. The seized parcel was addressed to Jordan at his residence. Agent Fell confirmed that the address was Jordan's residence through public records, vehicle registrations, and visual surveillance. The warrant was not executed until the seized item was accepted into the residence. Further, Agent Fell ran Jordan's criminal history and determined that he had multiple prior convictions for offenses punishable by imprisonment for a term exceeding one year. Jordan had previously ordered a firearm accessory to be delivered to that address. The affidavit explained that based on the affiant's training and experience, "[p]ersons engaged in illegal firearm and ammunition trafficking activity typically maintain at their residences . . . items constituting fruits, instrumentalities, and evidence of their criminal activities and associations." (ECF No. 49-1, ¶ 41.f).

Jordan's argument focuses on the alleged firearm suppressor. (ECF No. 49, p. 16 ("[T]he only proper conclusion that could have been made by the [issuing magistrate judge] is that there is a chance that there might be something that was turned into something illegal in . . . Jordan's home. The agent was not suggesting something inherently illegal (like cocaine) is likely to be present in . . Jordan's home. The agent swore there could be something the government considers, *in its present form*, made to be illegal if modified." (emphasis in original)). Jordan overlooks his other alleged criminal conduct charged at Count One – possessing firearms in violation of 18 U.S.C. § 922(g)(1). It is reasonable to assume that an individual who orders firearm accessories to their residence, *in their name,* possesses firearms at that location. Given that Jordan is a person not to possess due to his prior convictions, these facts established a basis for probable cause independent of the seized item. The Court holds that the affidavit established a sufficient nexus between the alleged contraband and Jordan's residence.

### D. The Good Faith Exception

The Court finds that the warrant was supported by probable cause and did not contain any material omissions or misstatements. Nevertheless, even if the warrant was invalid, the Court would not suppress the evidence and statements at issue because "[e]ven where a warrant violates the Fourth Amendment's particularity requirement, suppression of evidence pursuant to the exclusionary rule 'is inappropriate when an officer executes a search in objectively reasonable reliance on a warrant's authority.'" *United States v. Dougherty*, 541 F. Supp. 2d 734, 738 (E.D. Pa. 2008) (citation omitted). The relevant inquiry in determining good-faith reliance is "whether a reasonably well-trained officer would have known that the search was illegal despite the . . . judge's authorization." *United States v. Hodge*, 246 F.3d 301, 307 (3d Cir. 2001) (internal citations omitted). In most cases, the good-faith showing is not a difficult one for the Government to make: "The mere existence of a warrant typically suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception." *Id.* at 307–08.

In "rare circumstances," *United States v. Stearn*, 597 F.3d 540, 561 (3d Cir. 2010), however, a warrant may be so flawed that "the officer will have no reasonable grounds for believing that [it] was properly issued," *United States v. Leon*, 468 U.S. 897, 923 (1984). The Third Circuit has identified four such situations in which the good faith exception does not apply: (1) where the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit; (2) where the magistrate judge abandoned his or her judicial role and failed to perform his or her neutral and detached function; (3) where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) where the warrant was so facially deficient that it failed to

particularize the place to be searched or the things to be seized.  *United States v. Tracey*, 597 F.3d 140, 151 (3d Cir. 2010) (citations omitted); *see also Leon*, 468 U.S. at 923.

No situation exists that would prevent the Court from applying the good faith exception. First, while Jordan argues that the affidavit contains material omissions and misstatements, he does not contend that the affidavit is deliberately or recklessly false.  There is no evidence to suggest that Agent Fell acted in bad faith or made false statements in the affidavit.  Further, the Court finds Agent Fell's testimony at the evidentiary hearing to be entirely credible and that he did not intentionally misrepresent or intentionally omit any information that he believed to be relevant to the probable cause analysis in the affidavit.  (ECF No. 73, p. 52).  Second, there is no allegation or indication that the issuing magistrate judge abandoned her judicial role and failed to perform her neutral and detached judicial function.  Third, the affidavit was not so lacking in indicia of probable cause so as to render official belief in its existence unreasonable.  As discussed above, the affidavit provided the issuing magistrate judge with a substantial basis to find that there was probable cause that contraband or other evidence of a crime would be found in Jordan's residence.  Given the issuing magistrate judge's findings and the facts and evidence alleged, official belief in the warrant's validity was reasonable.  Finally, there is no allegation or argument that the warrant was not sufficiently particular.  The Court holds that the warrant was valid and supported by probable cause.  However, even if this was not the case, it would not exclude the evidence under the good faith exception. Law enforcement officers searched Jordan's residence in good faith reliance on a warrant approved by a neutral magistrate judge.  A reasonably well-trained officer would *not* have known that the search was illegal despite the issuing magistrate judge's authorization.

### III.    CONCLUSION

For the foregoing reasons, the Court will deny Jordan's Motion to Suppress Evidence and Statements (ECF No. 49) and Motion to Supplement the Record (ECF No. 77) by Order of Court to follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

_2/23/26_____
Dated